UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:05CV-3-R

G.D. DEAL HOLDINGS, INC., et al.,                                    PLAINTIFFS

v.

CINCINNATI INSURANCE COMPANY                          INTERVENOR PLAINTIFF

v.

BAKER ENERGY, INC., et al.,                                          DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on the Plaintiffs' Motion to Amend Judgment (Docket #151). The Plaintiffs request that the Court's Order Granting Plaintiffs' Motion for Summary Judgment for Enforcement of Surety's Liability (Docket #147) be amended to provide for prejudgment interest. The Intervenor Plaintiff, Cincinnati Insurance Company, responded (Docket #154), and the Plaintiffs replied (Docket #160). This matter is now ripe for adjudication. For the following reasons, the Plaintiffs' motion is **GRANTED**.

## BACKGROUND

This action was removed to this Court on January 10, 2005, from the Warren County Circuit Court. The Plaintiffs, GD Deal Holdings, LLC ("GD Deal") and Girkin Development, LLC ("Girkin"), filed this action against the Defendant Baker Energy, Inc. ("Baker Energy"), based on a dispute concerning real property and personal property leases connected to thirty-eight gasoline stations and convenience stores located throughout western Kentucky and north-central Tennessee. When Baker Energy filed its answer and counterclaim with this Court on

January 14, 2005, it included three bonds issued by the Intervenor Plaintiff, Cincinnati Insurance Company ("Cincinnati Insurance"), as surety, on behalf of Baker Energy, as Principal. The bonds were filed to provide assurance to the Court that if Baker Energy's claims were rejected and the Court determined that no overpayments were made, Baker would make the payments as assessed by the Court.

On May 11, 2007, this Court granted the Plaintiffs' Motion for Summary Judgment, awarding the Plaintiffs damages for Baker Energy's breach of various leases and finding that the Plaintiffs did not overcharge Baker any rent. On August 10, 2007, this Court entered an Order granting the Plaintiffs' Motion for Summary Judgment for Enforcement of Surety's Liability as to the bonds filed with this court in January 2005. The Court determined that Cincinnati Insurance was liable as the surety for Baker Energy in the amount of the bonds, $267,541.85. The Plaintiffs now seek to amend the Order of August 10, 2007, to include prejudgment interest at a rate of 8% from February 1, 2005, the date Baker Energy defaulted on its obligation to pay rent, until the date of judgment. In its Response, Cincinnati Insurance argues that the Plaintiffs are not entitled to prejudgment interest. In the alternative, Cincinnati Insurance argues that if the Court determines that prejudgment interest should be awarded, such interest should not begin accruing before May 11, 2007, the date the Court granted the Plaintiffs' Motion for Summary Judgment against Baker.

## DISCUSSION

When a federal court's jurisdiction rests on diversity of citizenship, as in the case at bar, Kentucky law governs an award of prejudgment interest. *Estate of Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *FDIC v. First Heights Bank*, *FSB*, 229

F.3d 528, 542 (6th Cir. 2000). In Kentucky, prejudgment interest applies "as a matter of course" when damages are liquidated. *Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136, 141 (Ky. 1991).

The Plaintiffs argue that their claim for payment under the bonds is a liquidated claim, entitling them to prejudgment interest, while Cincinnati Insurance argues that the claim is unliquidated. When a claim for damages is unliquidated, the trial court has discretion to determine the amount of prejudgment interest, if any, "as justice requires." *Id*. at 144 (quoting Restatement (Second) of Contracts § 354 (1981)).

In characterizing which damages constitute "liquidated" damages, the Kentucky Supreme Court in *Nucor* stated:

> Precisely when the amount involved qualifies as "liquidated" is not always clear, but in general "liquidated" means "[m]ade certain or fixed by agreement of parties or by operation of law." *Black's Law Dictionary* 930 (6th ed. 1990). Common examples are a bill or note past due, an amount due on an open account, or an unpaid fixed contract price.

*Id.* at 141 (alteration in original). By contrast, "unliquidated" damages are those "[d]amages which have not been determined or calculated, . . . not yet reduced to a certainty in respect to amount." *Id.* (quoting *Black's Law Dictionary* at 1537). The character of the damages is not affected by a dispute over liability, as a liquidated claim "may not be rendered 'unliquidated' by virtue of a good-faith denial of liability." *Shanklin v. Townsend*, 434 S.W.2d 655, 656 (Ky. 1968) (per curiam).

Liquidated damages are "those damages which are reasonably ascertainable at the time of the breach, measurable by a fixed or established external standard, or by a standard apparent from the documents upon which plaintiffs based their claim." *Ramada Development Co. v.*

3

*United States Fidelity & Guaranty Co.*, 626 F.2d 517, 525 n.11 (6th Cir. 1980) (citing *Banish v. Hamtramck*, 9 Mich. App. 381 (Mich. Ct. App. 1968); *Cree Coach Co. v. Wolverine Ins. Co.*, 366 Mich. 449, 115 N.W.2d 400 (1962)).  Thus, in order to award the Plaintiffs prejudgment interest as a matter of course, the Court must determine whether the Plaintiffs' claim for the full amount of the bonds is an amount that was reasonably ascertainable at the time of Baker's breach, and whether the claim is measurable by a fixed standard.

**1. The nature of the Plaintiffs' claim for payment under the bonds**

"In determining if a claim is liquidated or unliquidated, one must look at the nature of the underlying claim, not the final award."  *3D Enters. Contr. Corp. v. Louisville & Jefferson County Metro. Sewer Dist.,* 174 S.W.3d 440, 450 (Ky. 2005).  The Plaintiffs' underlying claim, which this Court granted, was for Cincinnati Insurance's payment of the three bonds it issued as Baker's surety.  A bond is a written promise to pay money or do some act if certain circumstances occur.  Black's Law Dictionary 73 (2d pocket ed. 1996) ; *see* 12 Am. Jur. 2d Bonds §1 (2007).  This Court determined that the bonds were a clearly written promise by Cincinnati Insurance to pay to the Plaintiffs the amount of the bonds if this Court found that the Defendants had not overpaid rent to the Plaintiffs.  The bonds were not conditional.

Cincinnati Insurance argues that although the bonds state a fixed sum, the actual payment of that sum was conditional.  They would not be bound to pay the bonds *unless* this Court decided they were liable, rendering the bonds unliquidated.  Cincinnati Insurance argues (1) that the bonds became liquidated only once the Court reached a decision on the action between the Plaintiffs and Baker Energy; and (2) the bonds are not liquidated because they only represent the upper limit of Cincinnati Insurance's liability.

However, the Court believes that these arguments are without merit. When Cincinnati Insurance issued the bonds as Baker's surety, it knew that it could be held to pay to the Plaintiffs $267,541.85. This is a fixed and easily ascertainable sum, representing a contested amount of unpaid rent, calculated as of the date the bonds were signed, January 12, 2005.

Further, in any contract that contains a liquidated damages clause, the ultimate payment of those damages is necessarily conditional. First, one party to the contract must sue the other party to the contract for an alleged breach. Second, a court must determine that the party is liable for the breach. Third, the court must determine that the liquidated damages clause is not meant as a penalty. *See Coca-Cola Bottling Works v. Hazard Coca-Cola Bottling*, 450 S.W.2d 515, 518-19 (Ky. 1970). Cincinnati Insurance agreed, when it issued the bonds, to pay the listed sums to the Plaintiff, if ordered to do so by the Court. Therefore, unlike an unliquidated claim, which is unspecified and undetermined prior to a breach, the bonds represent a fixed and certain liquidated claim. For these reasons, the Court will award the Plaintiffs prejudgment interest on the amount of the bonds.

**2. The date from which to compute the award of prejudgment interest**

The Plaintiffs seek to amend the Court's order to include prejudgment interest from February 1, 2005, the date Baker Energy defaulted on its obligation to pay rent, until the date of judgment. Cincinnati Insurance argues that interest should not begin accruing until May 11, 2007, the date the Court granted the Plaintiffs' Motion for Summary Judgment against Baker. There is very little Kentucky case law on this subject. Cincinnati Insurance relies on *Polk v. American Casualty Co.,* 816 S.W.2d 178 (Ky. 1991), in support of its claim that prejudgment interest does not begin to run against a surety until the court enters judgment against the

5

principal.

Cincinnati Insurance also argues that the Kentucky s Supreme Court held in *Polk* that even with prejudgment interest, the surety's liability could not exceed the penal sum of the bond. The Court, however, finds *Polk* of little assistance in this case. In *Polk*, the Kentucky Supreme Court addressed the accrual of prejudgment interest in the context of whether "the surety on a guardian's bond can be charged with interest from the date of the loss of the ward's estate when that interest will result in a recovery larger than the face amount of the bond." *Id*. at 178. A guardian's bond is one required by law, KRS 62.070, and is therefore quite different from the bonds voluntarily filed by Baker Energy in this case. The *Polk* court stated that "the maximum recovery against a surety on a guardians bond is limited by that statute to the penal sum fixed in the bond." *Id.* at 179.

The holding in *Polk* actually was very limited. The court specifically held that "a surety on the bond of a guardian is not chargeable with interest from the date of the loss to the estate of the ward *when the interest will result* in a recovery larger than the face amount of the bond." *Id.* at 180 (emphasis added). Therefore, the holding in *Polk* is not applicable to the instant case.

In the context of affirming the lower court's decisions, the court in *Polk* did state that the "general rule" was that "interest should begin to accrue against the surety on the entry of a judgment against the principal." *Id*. at 180. However, the three cases the court cites for this general rule provide little guidance to the Court and little support for Cincinnati Insurance's position. *Ohio Casualty Ins. Co. v. Ky. Natural Res. & Envtl. Prot. Cabinet* states this rule in the context of bonds for public officials, which are required by law. 722 S.W.2d 290, 294 (Ky. Ct. App. 1986). *Atlantic Painting & Contracting, Inc. v. Nashville Bridge Co.* involves an

6

arbitration dispute instead of bonds.  670 S.W.2d 841, 846 (Ky. 1984).  In *Fidelity & Cas. Co. of New York v. Downey*, the appellees, Downey, a "lunatic," and her brother (her "present committee,") were awarded $10,000 with interest from the date of judgment against her husband's estate and against the appellant as surety on the bond her husband was required by law to sign as her committee when Downey was originally committed to an insane asylum.  143 S.W.2d 869, 870-73 (Ky.App. 1940).

However, even if the Court disregards this general principle as stated in *Polk*, the Court still believes that under the circumstances of this case, Cincinnati Insurance was not obligated to pay the Plaintiffs the amount of the bonds until May 11, 2007.  This Court held that the "intention of the parties, based on the interpretation of the bonds in their entirety, was for the Plaintiffs to recover on the bonds if the Court determined that there was no rent overpayment as alleged by the Defendants" (Docket #146).  Thus, while Cincinnati Insurance was bound to pay the amount of the bonds, it was not bound to do so until the Court concluded the issue between the Plaintiffs and the Defendants.  The issue was concluded on May 11, 2007, when this Court entered an Order Granting the Plaintiffs' Motion for Summary Judgment against the Defendants, and concluded that there was no rent overpayment (Docket #98).  For these reasons, the Court finds that the accrual of prejudgment interest shall run from May 11, 2007.

**3.  Rate of interest**

The Court must now determine what interest rate to apply to the prejudgment interest awarded on the amount of the bonds.  The Plaintiffs correctly argue that in Kentucky, the legal rate of eight percent (8%) should be applied to liquidated claims as prejudgment interest.  In reviewing Kentucky law, the Sixth Circuit has held that "where a debt is liquidated, a successful

plaintiff is 'entitled to interest at the legal rate of eight percent (8%) per annum.'" *Poundstone v. Patriot Coal Co.*, 485 F.3d 891, 903 (6th Cir. 2007) (quoting *Pursley v. Pursley*, 144 S.W.3d 820, 828 (Ky. 2004). The legal rate is contained in KRS § 360.010, which provides that "the legal rate of interest is eight percent (8%) per annum." KRS § 360.010(1) (2007). Therefore, the Court will award the Plaintiffs prejudgment interest on the amount of the bonds from May 11, 2007, at the rate of 8% per annum.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion to Amend Judgment is **GRANTED**.

An appropriate order shall issue.